IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BRYAN WHEATLEY, and JANA WHEATLEY, d/b/a TEAM GREEN, | ) ) ) | Case No.  8:16cv_____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| VICTOR KIRKLAND, RICHARD BERKSHIRE, FREE POWER COMPANY, INC., and SOLAR PRODUCT SOLUTIONS, LLC, | ) ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | ) ) | |

## INTRODUCTION

1.     Free Power Company, Inc. ("Free Power") is a solar energy company headquartered in Omaha, Nebraska.  Victor Kirkland ("Kirkland"), an Omaha resident, is president.  Free Power installs solar photovoltaic energy equipment used to convert solar energy into usable electrical energy.

2.     In 2012, Free Power contracted with the City of Columbia, Missouri to install arrays of equipment, each of which produced kilowatts of electricity.

3.     Free Power designed its "programs" to entice commercial and government customers through two attractive features: (a) promises of lower monthly power bills and (b) "no capital investment [is] required."

4.     Free Power's contracts with Columbia were "supervised" by Solar Product Solutions, LLC ("SPS"), another company owned by Victor Kirkland.  Free Power solicited Plaintiffs (collectively "the Wheatleys," and individually "Bryan" and "Jana") and Team Green, through a mutual acquaintance, Dale Leuck ("Leuck").  Leuck was employed by Kirkland and also one of Bryan's college friends.  The Wheatleys had little or no experience in the solar industry but Leuck advised Kirkland that the Wheatleys wanted to expand into the solar industry.  Ultimately, Kirkland enticed them into contracting for installation of the Columbia solar arrays.

5.     At the outset, Kirkland advised the Wheatleys that Team Green's contractual obligations would be straightforward: supply the labor for the Columbia project.  In return, Kirkland informed the Wheatleys Team Green would make approximately $35,000 on the Columbia project.  The Wheatleys relied on Kirkland's promises and Berkshire's assurances.

1

6.      Once the Wheatleys signed the contract, Kirkland changed the rules.  Kirkland told the Wheatleys that Team Green was required to *supply* all equipment as well as to *install* it.  Kirkland refused to allow either Free Power or SPS to purchase necessary supplies and equipment.

7.      Kirkland's refusal forced the Wheatleys to pay for equipment by dipping into Team Green's operating capital.  Team Green was forced to use $300,000 of its operating capital that was originally allocated for Team Green's lawn care and snow removal needs.

8.      Kirkland's failure to perform procure equipment and supplies, as promised, forced the Wheatleys into obtaining bank loans to replenish Team Green's operating funds and cover shortfall that resulted.  These loans were obtained at great cost and interest.

9.      When the installation work was complete, Kirkland, Free Power and SPS refused to pay the Wheatleys for the labor and equipment purchases. Team Green purchased on behalf of Free Power, SPS and Kirkland, as promised.  The Wheatleys found it necessary enlist the services of their attorney, Richard Berkshire ("Berkshire").  Berkshire told the Wheatleys he could assist them in getting Kirkland to pay Team Green what it was owed.  Berkshire never told the Wheatleys that Berkshire was the General Counsel for Free Power and SPS, and that he represented Kirkland, as well.  Berkshire never disclosed his conflict of interest, never advised the Wheatleys of the conflict in writing and never asked for or received a waiver of the conflict.

10.      To date, Kirkland, Berkshire, Free Power and SPS have failed and refused to pay.  Kirkland has continuously *promised* to pay but has concocted a moving target of specious deficiencies with Team Green's billings in order to avoid payment.  In the meantime, however, the Defendants are all benefitting from regular payments from the city of Columbia, Missouri for the electricity produced by the solar arrays built on Plaintiffs' backs.

## PARTIES

### A.  Plaintiffs:

11.      Plaintiff Bryan Wheatley is now, and at all relevant times was, a resident of Douglas County, Nebraska.

12.      Plaintiff Jana Wheatley is now, and at all relevant times was, a resident of Douglas County, Nebraska.

13.      During the events alleged in the Complaint, Bryan Wheatley and Jana Wheatley were co-owners of "Team Green."  Team Green was a limited liability company having its principal place of business in Douglas County, Nebraska.  Team Green was engaged principally in the

business of grounds management.  The Wheatleys sold Team Green's assets in October 2014, but retained the liability associated with this litigation.

**B. Defendants:**

14.     Kirkland is now, and was at all relevant times, a resident of the State of Nebraska. Kirkland is now, and was at all relevant times, the president of Free Power and Solar Product Solutions, LLC ("SPS").

15.     Berkshire is now, and was at all relevant times, a resident of the State of Nebraska. Berkshire is a licensed attorney in the State of Nebraska, and at all relevant times, acted as General Counsel for both Free Power and SPS.  Berkshire was the attorney for Bryan and Jana Wheatley when they formed Team Green, LLC and he handled the real estate transaction for the Wheatleys when Team Green purchased the commercial property on which Team Green conducted business.

16.     Free Power is a Delaware Corporation with its principal place of business at 1301 South 75th Street, Omaha, Nebraska 68124.

17.     SPS is a Delaware Limited Liability Company with its principal place of business at 4350 S 90th Street, Omaha, Nebraska 68127.

## JURISDICTION AND VENUE

**A.     Jurisdiction**

18.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the claim brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., ("RICO"), raises a federal question.

19.     This Court has supplemental jurisdiction over the additional state law claims, pursuant to 28 U.S.C. § 1367.  Plaintiffs' state law claims are part of the same case or controversy as the claim providing the Court's original jurisdiction.

**B.     Venue**

20.     Venue in this district is appropriate under 18 U.S.C. § 1965 and 28 U.S.C. § 1391. A substantial part of the events giving rise to this claim occurred in this District, as the parties negotiated and executed the Contract in the District of Nebraska, sent and received electronic mail and conducted wire transmissions into and out of this District.

## FACTS

**A.** **Kirkland Misleads The Wheatleys & Team Green into Entering A Construction Services Agreement.**

21. In December 2010, Kirkland and Free Power entered into an agreement with Columbia, Missouri ("Columbia") to supply it with solar power.

22. During March 2012, Free Power and Kirkland sought out Team Green to fulfill the terms of Free Power's contract with Columbia. Free Power, Kirkland, the Wheatleys and Team Green entered| into a "Construction Services Agreement" (the Agreement") in which Team Green agreed to install of certain solar arrays (the "Arrays") in Columbia. (The Agreement is attached as Exhibit A and incorporated by this reference.)

23. Defendants promised that they would pay Plaintiffs for installation of the solar arrays. The Agreement has an effective date of April 7, 2012. The negotiations took place in person, in Douglas County, Nebraska, and also by telephone.

24. Berkshire agreed to represent Team Green and the Wheatleys during negotiations and performance of the Agreement. Significantly, Berkshire failed to disclose that he also represented Free Power and Kirkland during these same negotiations and performance of the Agreement.

25. Berkshire represented to the Wheatleys and Team Green that the Agreement was a good deal and that he believed Free Power and Kirkland would perform. During the performance of the Agreement, Berkshire further represented to the Wheatleys and Team Green that he was personally assured by Kirkland and that he and Free Power would pay Plaintiffs what they were due pursuant to the Agreement.

26. Plaintiffs relied on Berkshire's advice and representation when they executed the Agreement on or around May 8, 2012.

### 1. The Purpose of the Agreement

27. According to the Agreement, the parties each were obligated as follows:

   a. Plaintiffs agreed to provide the labor and tools needed to install the Arrays.

   b. Defendants agreed to provide specific parts and materials (collectively "Materials"), specified in the Agreement, for the construction and installation of the Arrays.

(Exhibit A, ¶ 1. & Ex. A to the Agreement)

4

## 2.  Financial Terms of the Agreement

21.     The Agreement required Free Power to pay Team Green upon installation of the Arrays.  The amount due was based on the watts of electricity capable of being produced by each Array.

     a.     Specifically, SPS agreed to pay Team Green $0.07 per installed watt.  The estimated number of total watts to be installed during the Project was 0.50 megawatts (equal to 500,000 watts), amounting to $35,000 to be paid to Plaintiffs for labor:

> 2.1. **Flat Rate.**  As full consideration to TEAM for complete performance of the Work described in this Agreement and all costs incurred in connection herewith, SPS shall pay to TEAM the following flat rate, which shall comprise the Contract Price:  $0.07 (seven cents) per installed watt, fully installed.

(Exhibit A, § 2.1).

     b.     SPS also agreed to reimburse Plaintiffs for the cost of Materials plus a premium of six percent (6%), if Plaintiffs were required to purchase Materials that were SPS's responsibility under the Agreement.

> 2.4.   **Other Materials.**  To the extent that SPS requests TEAM to provide building materials for a Project that would otherwise by SPS's responsibility to provide, TEAM will provide such items at its actual out-of-pocket cost plus 6.0%.

(Exhibit A, § 2.4).

22.     The parties' agreement obligated SPS to pay Team Green all amounts due within ninety (90) days of each Array's completion, unless a valid dispute existed over work performed or amount due.

23.     The Parties agreed that amounts due to Plaintiffs which remain unpaid after ninety (90) days accrue interest at a rate of twelve percent (12%) per annum.

> 2.6.1.2.   **Interest.**  Payments which are due and unpaid by SPS to TEAM shall bear interest commencing the day after payment is due at the rate of twelve percent (12%) per annum.

(Exhibit A, § 2.6.1.2).

## 3.  Payment Disputes

24.     According to payment terms of the Agreement, Team Green was to send a "Summary of Payment" to SPS, requesting payment for labor performed and Materials purchased by Plaintiffs, as each Array was completed.

25.     If SPS disputed any amounts in the Summary of Payment, SPS agreed to:

a.   Notify Plaintiffs of any dispute, regarding the labor performed or amount owed, within fifteen (15) days of receiving Plaintiffs' Summary of Payment;

b.   Notify Plaintiffs in *writing* of any disputed items;

c.   Provide specific information regarding the amount objected to and the reason for the dispute;

d.   Provide specific information regarding how Plaintiffs could resolve the matter or correct the issue with the labor; and

e.   Provide Plaintiffs with a reasonable period to cure the alleged issue.

### 4.   The Kirkland Entities Fail to Perform.

26.   SPS, Free Power and Kirkland failed and refused to supply the Materials required by the parties' Agreement and necessary for Team Green to install the Arrays.  This failure compelled the Wheatleys to purchase Materials needed for the Arrays.

27.   Defendants failed to repay the Wheatleys for Materials they were forced to purchase, even though Defendants agreed to do so in the Agreement.  (Ex. A, Agreement at ¶ 2.4)  As of today, the Arrays are operational, producing electricity, and Defendants are receiving pay from Columbia for the electricity.

28.   Team Green performed the labor required to install the Arrays, as stated and required in the Agreement.

29.   Defendants' failed both to supply Materials and then refused to pay Plaintiffs for the Materials Team Green was required to purchase as cover.  As a direct result of Defendants' refusal, the Wheatleys and Team Green were forced to utilize Team Green's operating fund to pay for the Materials purchased.  As a direct result, this required Team Green to suffer a shortage of cash, necessitating private loans to keep Team Green operating.

### 5.   Arrays Presently Are Installed And Working

30.   Team Green completed the installation of the Arrays on or about November 14, 2012.  Defendants notified Team Green during November 2012 of an issue with the installation of a single Array.  Team Green immediately sent personnel to correct the issue.

31.   In a memorandum on June 24, 2013, Columbia acknowledged that, as of June 2013, a total of 335 KW (or 335,000 watts) had been installed and the Arrays were operational. The Arrays produce approximately 450,000 kilowatt hours per year:

Since December, 2010, a total of 335 KW of PV power has been installed and is operational at the COLT Transload Facility on Brown Station Rd.  Currently the roof of the facility has 227.8 KWs and the ground system located behind the Transload has 103 KWs installed and operational.  Through May, 2013 the utility has paid FPC a total of $22,192.13 for the 404,000 KWH generated.

Current production level is approximately 450,000 KWHs per year, or 450 MWHs per

(A true and correct copy of Columbia's memo is attached as Exhibit B and incorporated by this reference.)

32.    Defendants have received ongoing payments from the City for electricity produced by the Arrays that Team Green installed.

Free Power payments based on electrical generation to date

| Month | Transload Roof (MWh) | Transload Ground (MWh | Total FPC PV (MWh) | Toat FPC PV Cost |
|---|---|---|---|---|
| Dec (11) | 2.3 | | 2.3 | $126.39 |
| Jan (12) | 4.04 | | 4.04 | $222.00 |
| Feb | 6.81 | | 6.81 | $374.21 |
| Mar | 17.14 | | 17.14 | $941.84 |
| April | 18.55 | | 18.55 | $1,019.32 |
| May | 25.05 | | 25.05 | $1,376.50 |
| Jun | 25.90 | | 25.90 | $1,423.21 |
| Jul | 24.45 | | 24.45 | $1,343.53 |
| Aug | 25.46 | | 25.46 | $1,399.03 |
| Sep | 28.52 | | 28.52 | $1,567.17 |
| Oct | 20.96 | | 20.96 | $1,151.75 |
| Nov | 26.07 | 7.34 | 26.07 | $1,432.55 |
| Dec | 11.48 | 7.18 | 18.66 | $1,025.37 |
| Jan (13) | 13.72 | 10.27 | 23.99 | $1,318.25 |
| Feb | 17.29 | 9.97 | 27.26 | $1,497.94 |
| Mar | 21.04 | 10.33 | 31.37 | $1,723.78 |
| April | 26.69 | 9.55 | 36.24 | $1,991.39 |
| May | 29.92 | 11.16 | 41.09 | $2,257.90 |
| Total | 345 | 66 | 404.00 | $22,192.13 |

(Exhibit B).

### 6.    Defendants Fail To Pay Team Green and/or the Wheatleys

33.    After the installation of the Arrays, Plaintiffs repeatedly sent invoices to SPS for payments due for both labor and Materials.  Team Green's invoice included the six percent (6%) premium for Materials, as specified in the Agreement.  (Ex. A, Agreement, ¶ 2.4)

34.    In January 2013, Kirkland challenged Plaintiffs' invoices.  Defendants failed to comply with the process for disputes of specific items on the Summary of Payment. (Ex. A,

Agreement ¶¶ 2.6.1 & 2.6.1.1.)  The parties negotiated their dispute and agreed on the correct amount for the payment.  Kirkland confirmed the Agreement by email on January 4, 2013, stating the billing "should now be correct" and he "look[ed] forward to receiving" the corrected invoice from Plaintiffs.  (Kirkland's 1/4/2013 email is attached as Exhibit C and incorporated herein by this reference.)

From: Free Power Company [mailto:freepowercompany@gmail.com]
Sent: Friday, January 04, 2013 2:51 PM
To: Holley Garcia, Team Green Grounds
Cc: Jon Brinton
Subject: Re: Report from ECO Distributing LLC

Holley,

I think it is important to respond to your email so that Jon or others do not misunderstand the events that have and are taking place.

The only answer(s) that I believe you are wanting for is; when payment will be issued to Team, how much will the payment be, and a check number. As I have said in the past I can not answer any of the questions untel such time that we receive proper billing from Team. We have gone back and forth several times with Team correcting the billing. It sounds as if Dale and Joe have now corrected and re-categorized the billing so that it should now be correct.

I have been aware of the billing errors and have worked with Team to address them. I was not aware of the specifics of Teams payments or its decision to stop payment. If paymnets are not made to vendors on time we will need to review the impact of such non payment and how to assure that the vendors get paid. Not to mention the impact it may have on the projects including how it may effect the tax benefits of the project. I suspect that Astronergy and China's Export & Credit Insurance Corporation Sinosure will suspend all currant and future credit facilities. This alone could have a devastating impact on future work.

I look forward to receiving the clean copy of the latest billing.

(Exhibit C).

35.   Team Green promptly sent the negotiated and agreed on request for payment to the SPS Defendants.

36.   Two months later, Kirkland admitted in writing that he still had not paid Team Green:

From: freepowercompany@gmail.com [mailto:freepowercompany@gmail.com] On Behalf Of Free Power Company
Sent: Friday, March 01, 2013 11:14 AM
To: teamgreengrounds@cox.net
Subject: response

Bryan,
I have not forgotten, I still need to review and fill in my draft to you.

(Kirkland's 3/1/2013 email is attached as Exhibit D and incorporated herein by this reference.)

37.   The Wheatleys have continued to send written demands for payment to Defendants.  Berkshire offered to assist the Wheatleys.  He assured them repeatedly of Kirkland's intent and ability to pay.  He never bothered to disclose, however, that he was the General Counsel for Defendants.

38.     Defendants continually refuse to make any payment whatsoever to the Wheatleys or Team Green for the Project.  With interest, Defendants owe Plaintiffs in excess of $400,000.00 for the funds forwarded by Team Green, costs of operations, and Materials purchased.  The exact amount of damages will be determined at trial.

### FIRST CAUSE OF ACTION
### (RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS)

39.     Plaintiffs incorporate by reference Paragraphs 1-38, as if fully set forth.

40.     At all relevant times, Jana and Bryan Wheatley were each a "person" within the meaning of 18 U.S.C.§ 1961(3).

41.     At all relevant times, SPS, Free Power, Berkshire, V. Kirkland, and J. Kirkland were each a "person" within the meaning of 18 U.S.C. §1961(3).

42.     Defendants each entered into an association-in-fact to defraud Plaintiffs, which constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

43.     At all relevant times, Free Power, SPS, V. Kirkland, and Berkshire formed an "enterprise," as defined under 18 USC § 1961(4).

44.     At all relevant times, the persons involved in the operation of this enterprise were engaged in, and their activities affected, interstate and foreign commerce, within the meaning of 18 U.S.C. §1962(c).

45.     At all relevant times, all Defendants associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c).

46.     The enterprises identified above had the common or shared purpose of enriching Defendants at the expense of the Wheatleys and Team Green through racketeering activity within the meaning of 18 U.S.C. § 1961(1), by engaging in the acts specified above.

47.     There was continuity in the structure and personnel of the enterprise.  Kirkland consistently operated the enterprise with the participation of Berkshire.

48.     Through their enterprise or association-in-fact, each Defendant conducted or participated, either directly or indirectly, in the conduct of the enterprises' affairs through a "pattern of racketeering activity" within the meaning of RICO pursuant to 18 U.S.C. § 1961(5) and in violation of RICO pursuant to 18 U.S.C. § 1962(c).

49.     Specifically, Defendants engaged in a pattern of racketeering activity within the meaning of RICO pursuant to 18 U.S.C. §1961(1) by engaging in the following predicate acts:

a.    Defendants committed acts constituting mail fraud under 18 USC § 1341, a predicate act for racketeering under RICO, pursuant to 18 U.S.C. § 1961(1).  Specifically:

    i.    Defendant Berkshire, as part of the scheme to defraud Plaintiffs, purported to represent Plaintiffs' interests and assist them in securing payment from Kirkland.  Unbeknownst to the Wheatleys, Berkshire was general counsel for SPS, Free Power, and Kirkland.  Berkshire intentionally concealed that information from Plaintiffs to further the enterprise Defendants' scheme.

    ii.    Berkshire provided legal advice and assistance for which Team Green provided compensation on the following dates:

| | |
|---|---|
| -   12/31/2012 | $11,559.35 |
| -   4/22/2013 | $ 2,220.00 |
| -   11/10/2014 | $ 3,972.50 |

    iii.    Defendants engaged in a scheme to defraud Plaintiffs by promising at the time the parties entered the Contract, and in both January 2013 and March 2013, to pay Plaintiffs for Material and labor.  The enterprise Defendants never had any intent to pay Team Green or the Wheatleys.  The Wheatleys made the following payments for purchase of materials included in the Agreement, which were not their responsibility pursuant to ¶ 2.4 & Exhibit A to the Agreement:

| DATE | AMOUNT | INVOICE(S) |
|---|---|---|
| 10/30/2012 | $34,947.94 | TG102312;<br>TG101812<br>TG102512<br>TG0101512<br>TG100812<br>TG100813 |
| 2/1/2013 | 83,933.61 | TG092816<br>TG092817 |
| 8/31/2012 | 14, 934.78 | Colt Zone 2<br>TG062612 |
| 7/18/2012 | 16,335.44 | TG002512<br>TG0712126<br>TG071212E<br>TG062612<br>TG071212A |

| | | |
|---|---|---|
| 8/27/2012 | 631.85 | Colt Zone 2<br>TG061812 |
| 11/9/2012 | 39.70 | TG101812F<br>TG102412<br>Colt ground |
| 10/8/2012 | 1,130.82 | TG091312<br>TG091312<br>Colt ground<br>TG091412<br>TG092813 |
| 8/9/2012 | 4,421.85 | Zone 2<br>Zone 3 |
| 10/16/2012 | 57.208.45 | TG08F12<br>TG0092512<br>TG092412a<br>TG092612<br>TG092814<br>TG092815<br>TG092812<br>Colt ground |
| 8/20/2012 | 14,982.95 | TG081712<br>Testing |
| 8/7/2012 | 221.78 | TG071212D |
| 8/17/2012 | 977.53 | TG072412<br>TG080312<br>TG080312A |
| 10/29/2012 | 34,559,51 | Colt Ground<br>TG100512b<br>Zone 2<br>TG072012 |
| 9/21/2012 | 15,543.59 | TG071812<br>Colt Zone 3<br>Colt Zone 2<br>TG071812e |

iv.     Defendants made their promises with intent to defraud Plaintiffs and

obtain Plaintiffs' labor and Materials by false pretenses.   The

Defendants induced Plaintiffs to expend substantial labor and

forced Plaintiffs to provide Materials but refused to pay Plaintiffs for labor or Materials.

v.    The Enterprise Defendant now has possession of the Arrays, and the City of Columbia is paying the Enterprise for the electricity produced by the Arrays.

vi.    The Enterprise Defendants demanded that Plaintiffs send payment requests by U.S. Mail for labor performed by Team Green. The enterprise Defendants never had any intent of paying the Wheatleys. As such, it was reasonably foreseeable that Defendants used the mail system to carry out or advance their fraud.

vii.    The use of the U.S. Mail system was in furtherance of the enterprise Defendants' scheme. The enterprise Defendants intended to create confidence in and reliance on the Enterprise Defendants' promises.

b.    The Enterprise Defendants committed acts constituting wire fraud under 18 USC § 1343, which is a predicate act for racketeering under RICO, pursuant to 18 U.S.C. § 1961(1). Specifically:

i.    Defendants engaged in a scheme to defraud Plaintiffs by promising in email communications, transmitted by wire, on January 4, 2013 and March 1, 2013 to pay Plaintiffs when Defendants had no intention of doing so.

ii.    Kirkland contacted Plaintiffs by telephone. The Wheatleys and demanded payment and the enterprise Defendants repeatedly made false promises that payment was forthcoming.

iii.    The Enterprise Defendants transmitted their promises of payment by wire, email, and telephone. The enterprise Defendants intended to defraud Team Green and the Wheatleys by stealing Team Green's labor and Materials through false representations and promises.

iv.    The Enterprise Defendants' wire communications were made in furtherance of Defendants' scheme to defraud Team Green and the Wheatleys. The Enterprise Defendants used wire transmissions to induce Plaintiffs to provide labor and Materials, to rely on the

12

Enterprise Defendants' promises, and to delay collection activity against individuals who comprised the Enterprise.

c. The Enterprise Defendants made threats to the Wheatleys and Team Green, alleging violations of the parties' Non-Disclosure Agreement, false claims of extortion and blackmail, Confidentiality Agreement, poor workmanship, violations of the Deb Collection Practices Act, in writing on at least the following dates:

12/2/2014
12/12/2014
12/18/2014

50.    The acts of racketeering activity referred to above constitute a "pattern of racketeering activity" within the meaning of RICO pursuant to 18 U.S.C. § 1961(5) and the acts alleged were related to each other by virtue of common participants, common victims, a common purpose and common result.  The Enterprise Defendants defrauded Plaintiffs and enriched the Enterprise Defendants.  The Enterprise Defendants' fraudulent scheme began on or shortly prior to March 19, 2012 and continues through the filing of this Complaint.

51.    Plaintiffs suffered damages as a result of Defendants' pattern of racketeering, including, but not limited to, the amount of the Contract price for the labor, and the cost of materials purchased plus 6%, the cost of replenishing the operating costs for Team Green when it was forced to use operating funds to purchase Enterprise Defendants' equipment, materials and supplied. Plaintiffs performed the labor and Defendants have not paid the amount specified by the Contract. The exact amount of damages will be determined at trial.

52.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover three (3) times the actual damages they suffered as a result of the violation of RICO by Defendants and for the cost of this lawsuit, including reasonable attorney fees.

WHEREFORE, Plaintiffs request that this Court enter judgment on their behalf, against Defendants, for their damages in an amount to be proven at trial, threefold damages pursuant to RICO, as well as pre- and post-judgment interest thereon at the highest legal rate, for the costs of this action and any attorney fees incurred, and for such other relief as the Court deems proper.

## <u>SECOND CAUSE OF ACTION</u>
### (BREACH OF CONTRACT)

53.    Plaintiffs incorporate by reference Paragraphs 1-52, as if fully set forth.

54. SPS agreed to pay Plaintiffs for (1) labor, based on the amount of Arrays installed, and (2) Materials that Plaintiffs were required to purchase, with a six percent (6.0%) premium. (Ex. A, ¶ 2 *et seq.*)

55. SPS agreed to pay Plaintiffs amounts that were due and owing within 90 days of Team Green's installation of each Array. (Ex. A, ¶ 2.6)

56. SPS also agreed that any amounts owed to Team Green which were not paid within 90 days would accrue interest at the rate of 12% per annum. (Ex. A, ¶2.6.1.2)

57. Plaintiffs performed all their obligations under the Agreement.

58. No Defendant notified any Plaintiff about any issues with Team Green's labor nor did any Defendant dispute an amount owed to Team Green Plaintiffs within fifteen (15) days of receiving Plaintiffs initial requests for payment. (*See* Ex. A, ¶ 2.6.1.1.)

59. Kirkland, on behalf of the corporate Defendants, committed in written emails dated January 4 and March 1, 2013, to pay the Wheatleys and/or Team Green. Plaintiffs relied on such representations to their detriment. Plaintiffs reasonably relied on Kirkland's commitment to pay the agreed on amount.

60. Defendants breached the Agreement by failing to pay the Wheatleys and/or Team Green within 90 days of demand for payment.

61. As a result of Defendants' breach, Plaintiffs are due damages in the amount of the Agreement price for labor performed and Materials purchased. The total amount of damages will be determined at or prior to trial, but exceed $400,000.00, including applicable interest.

WHEREFORE, Plaintiffs request that this Court enter judgment on their behalf, against Defendants, in the amount the Plaintiffs would have received had Defendants not breached, plus applicable interest.

## THIRD CAUSE OF ACTION

## (FRAUDULENT MISREPRESENTATION –
## AS TO KIRKLAND, FREE POWER & SPS)

62. Plaintiffs incorporate by reference Paragraphs 1-61, as if fully set forth.

63. Kirkland, on behalf of Free Power and SPS, voluntarily entered the Agreement with Team Green. Kirkland fraudulent misrepresented Defendants agreement to supply materials, pay Team Green for labor, and to reimburse Team Green and the Wheatley's when he emailed Bryan Wheatley his agreement in writing in January 2013.

64. On behalf of Free Power and SPS, Kirkland falsely represented that Defendants would pay Team Green, that Defendants agreed with the correctness of Team Green's invoice, and in March 2013 Defendants would be sending payment to Plaintiffs.

14

65.     As President of both Free Power and SPS, Kirkland knew at the time he sent the emails at issue, the representations regarding the accuracy of Team Green's invoice and SPS's intent to pay Team Green were false.  Defendants did not make any such payment.

66.     Kirkland made the representations with the expectation and intent that Team Green and the Wheatleys would rely on his representations due to their inexperience in the solar industry.  Kirkland knew of and was informed of the Wheatley's and Team Green inexperience through Dale Leuck, a mutual acquaintance of the Enterprise Defendants and Plaintiffs.

    a.   Team Green and the Wheatleys detrimentally relied on Defendants' representations and promises of payment.

    b.   In furtherance of such reliance, the Wheatleys utilized the operating funds for Team Green's grounds maintenance budget so employees could be paid and materials equipment and supplies purchased.  Ultimately, the Wheatleys and Team Green were forced to secure loans to cover depletion of Team Green's operating funds as a direct result of the Kirkland's Free Power's and SPS's failures and refusal to pay.  The Wheatleys and Team Green invested substantial time, effort and funding into completing performing under the Agreement.

67.     Kirkland's misrepresentations are a direct and proximate cause of damages suffered by Plaintiffs.  Specifically:

    a.   Defendants have not paid the Wheatleys the Agreement price for labor performed and Materials purchased, as agreed in the Agreement and restated in January 2013;

    b.   The Wheatleys have continued making payments on the loans they entered into for replenishing the operating funds for Team Green's maintenance budget, while waiting for Defendants to pay amounts due and owing;

    c.   Plaintiffs have incurred ongoing interest costs for these bank loans, all of which were undertaken as a result of Defendants' failure to pay and Kirkland's misrepresentations.

WHEREFORE, Plaintiffs request that this Court enter judgment on their behalf by awarding the Wheatleys the amounts Defendants agreed was due to Plaintiffs in January 2013, plus interest under the terms of the Agreement and other such damages which are due to Defendants misrepresentations.

## FOURTH CAUSE OF ACTION

### (FRAUDULENT MISREPRESENTATION –
### AS TO BERKSHIRE)

68.     Plaintiffs incorporate by reference Paragraphs 1-67, as if fully set forth.

69.     Berkshire had an attorney client relationship with Team Green and the Wheatleys.

70.     Berkshire had an attorney client relationship with all of the other Defendants.

71.     Berkshire offered his legal expertise and guidance to the Wheatleys during their negotiations and contractual relationship with the other Defendants.  Berkshire failed to disclose that he was General Counsel for the corporate Defendants and fraudulently misrepresented his prior and existing relationship with Defendants.

72.     Berkshire repeatedly assured the Wheatleys that he was confident Kirkland would pay, that he knew Kirkland was "good" for the amounts Defendants owed and offered his expertise and assistance in procuring payment.

73.     To entice the Wheatleys to rely on his advice and recommendations and retain his services, Berkshire intentionally failed to disclose his conflict of interest in representing both parties to the Agreement.

74.     Berkshire's failure to disclose to Team Green and the Wheatleys that he had a pre-existing relationship with Free Power, SPS and Kirkland was intentional, reckless and negligent.

75.     As General Counsel for Free Power and SPS, Berkshire knew at the time he entered the relationship with the Wheatleys that his representations, advice and assurances regarding the terms of the deal, the reliability of the Defendants and the likelihood of payment were suspect at best, that his representations, advice and assurances could not be relied on because such representations, advice and assurances were at the Wheatley's expense, not in their best interests.

76.     Berkshire made the representations with the expectation and intent that Team Green and the Wheatleys would rely on his representations.  Berkshire, Kirkland and each of the corporate Defendants expected to profit as a result of the Wheatley's reliance on Berkshire's advice.   In fact, Team Green and the Wheatleys detrimentally relied on Berkshire's representations and promises.

77.     Berkshire's misrepresentations are a direct and proximate cause of damages suffered by Plaintiffs.  Specifically:

      a. Team Green and the Wheatleys performed the Agreement as a result of Berkshire's advice and counsel;

16

    b. The Wheatleys were forced to enter into loans to replenish Team Green's operating funds because they relied on Berkshire's advice that Kirkland would pay pursuant to the Agreement;

    c. Plaintiffs have accumulated interest on these loans, as a result of Berkshire's advice that they could rely on Kirkland to pay what was due pursuant to the Agreement.

WHEREFORE, Plaintiffs request that this Court enter judgment on their behalf by awarding the Wheatleys the amounts Defendants agreed was due to Plaintiffs in January 2013, plus interest under the terms of the Agreement and other such damages which are due to Defendants misrepresentations.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request that this Court enter judgment on their behalf and award damages including:

    a. All amounts due under the Agreement, including payment for labor performed and Materials purchased, plus interest, according to the Agreement;

    b. All loan amounts Team Green and/or the Wheatleys were required to secure from lending institutions due to Defendants' failure to pay amounts due and owing;

    c. All interest expenses Team Green and/or the Wheatleys were required to pay to lending institutions due to Defendants' failure to pay amounts due and owing;

    d. An award of attorney's fees and costs;

    e. Prejudgment interest and costs; and

    f. Such other and further relief as allowed by law and as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.


Date:  April 7, 2016


Respectfully submitted,

**BRYAN WHEATLEY and JANA WHEATLEY,
d/b/a TEAM GREEN,** Plaintiffs


By:     _Terry A. White_____
Terry A. White, #18282
**CARLSON & BURNETT LLP**
17525 Arbor Street
Omaha, NE 68130
Main Line (402) 934-5500
Direct Line (402) 682-8006
Terry@carlsonburnett.com
***Attorney for Plaintiffs***